IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALICIA M. MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL CASE NO. 06-143-GPM-PMF |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Plaintiff, Alicia M. Murphy, seeks judicial review of a final decision of the Commissioner of Social Security denying her September, 2002, application for supplemental security income.[1] An Administrative Law Judge (ALJ) denied the application after finding that Murphy was not disabled. That decision became final when the Appeals Council denied a request for review of the ALJ's decision. Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and §1383(c).

To receive supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as the defendant in this action.

from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 1382c(a)(3)(b), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id.*

The ALJ evaluated plaintiff's application through Step 5 of the sequential evaluation, finding that her multiple impairments, including infection with the Human Immunodeficiency Virus (HIV), did not meet or equal in severity a listed impairment, and that she had no relevant work history. At Step 4, the ALJ decided that plaintiff retained the ability to perform a range of light work, with additional limits on the amount of weight she could lift or carry and with a further limitation restricting her to simple, repetitive tasks. At Step 5, the ALJ decided that plaintiff was not disabled because she could perform a substantial number of jobs, such as laborer, assembler, and packager (R. 15-23).

Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or remanding for further proceedings, claiming that the ALJ failed to properly

assess the credibility of her testimony. Defendant responds that the ALJ applied the correct law and reasonably found that plaintiff's testimony was not fully credible because the record as a whole did not support her description of disabling medication side effects.

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### I.     Credibility Assessment

Plaintiff challenges the ALJ's finding that plaintiff's testimony regarding medication side effects was not credible. The pertinent parts of the administrative record are summarized as follows.[2]

---

[2] Because plaintiff does not challenge the ALJ's assessment of her mental condition, those aspects of the record are not fully explored.

In December, 1999, plaintiff tested positive to HIV, the human immunodeficiency virus. She was seen by Dr. Rajagepal, who treated her over a period of approximately seven months for anemia, a rash, and diarrhea (R. 188-193).

In February, 2003, plaintiff underwent a psychiatric evaluation, explaining that her main physical symptom was chronic fatigue, with additional problems maintaining concentration (R. 183-84).

In May, 2003, two physicians reviewed plaintiff's medical records and formed the impression that she could perform light work (R. 292-299).

In August, 2003, Dr. Badahman examined plaintiff and diagnosed HIV, persistent anemia, sinus congestion, and persistent disease of the lymph nodes. She was started on anti-HIV medications, including an AZT regimen.

In September, 2003, plaintiff was treated for symptoms of fatigue and sore throat (R. 198). When she described her medical history, she reported headache, heart murmur, chest pain, dizziness, bronchitis, lactose intolerance, bowel irregularity, frequent infections, anemia, nervousness, and depression (R. 197).

Also in September, 2003, plaintiff described her condition in a disability report. She reported memory loss, dizziness, loss of appetite, weight loss, extreme tiredness, various types of infection, sleep disturbance, and forgetfulness. At that time, plaintiff was being treated for depression (R. 92).

Also in September, 2003, plaintiff was seen for follow-up. She described a loss of appetite, and her medications were adjusted (R. 200).

In October, 2003, plaintiff was seen for knee pain following a fall (R. 201, 227-29). She was diagnosed with a knee strain and treated with a brace and crutches.

Also in October, 2003, plaintiff was treated for severe anemia, after complaining of general malaise, aches, and dizziness. She reported no nausea, vomiting, bloody stools, headache, shortness of breath, respiratory difficulty, itching, chest pain, or back pain. She was admitted for blood transfusion and iron supplementation. Her physicians formed the impression that her rapid hemoglobin decline was linked to her AZT medication, secondary to bone marrow suppression. Her medical assessment was reported as HIV AIDS – currently stable, severe anemia, and depression. Her medications included Kaletra, Combivir, Bactrim DS, Trazodone, Prevacid, and Clarinex (R. 244-272).

In November, 2003, a physician reviewed plaintiff's medical records and formed the impression that she retained the ability to perform light work (R. 299).

In December, 2003, plaintiff was seen for symptoms of cough, fever, body aches, and chest pain with breathing or coughing. She was given Tylenol and advised to alternate between Motrin and Tylenol (R. 238-241).

In January, 2004, plaintiff was seen for follow-up. She was doing well on her new HIV/AIDS medications: Kaletra, Epivir, and Viread. Her iron deficiency anemia medications were Ferusol and Colace, and she was also taking Bactrim DS and Prevacid,. She reported that she was doing well and complained only of occasional gas (R. 300).

In February, 2004, plaintiff reported that she was recovering from an upper respiratory tract infection, that her cough had improved and that her weight had increased. Her doctor formed the impression that she was doing well. He adjusted her medications, discontinuing Bactrim DS and reducing the Colace (R. 301).

In March, 2004, plaintiff's physician reviewed her condition on follow-up. He again indicated that plaintiff was doing well on her medication regimen and advised her on diet and exercise (R. 303).

In May, 2004, plaintiff's physician reviewed her condition on follow-up and again indicated that she was doing well. Her Kaletra medicine was changed to Reyataz, and potential side effects were discussed, with instructions given for bilirubin level testing if signs of jaundice appeared. After the new medication was started, plaintiff reported a couple of bumps on her skin but denied other side effects, such as shortness of breath, difficulty breathing, or problems swallowing.

In July, 2004, plaintiff had no complaints on follow-up, describing mild numbness on the left elbow and shooting pain to the fingers. She reported no rash, jaundice, swelling, inflammation, fever, chills, nausea, or vomiting. Her physician formed the impression that she was doing well. She was started on anti-inflammatory medication for the symptoms in her left arm.

In August, 2004, plaintiff was seen for follow-up and requested a pregnancy test. She denied symptoms of nausea, vomiting, headache, or photophobia (R. 309). Her past history was reported as "HIV/Advanced AIDS, currently doing well" and her anemia was described as stable. Her pregnancy test was negative (R. 309, 328).

In September, 2004, plaintiff was seen for follow-up. She described mild suprapubic discomfort and occasional increased urinary frequency in the past few days. She denied symptoms of fever, chills, flank pain, nausea, vomiting, or difficulty with urination. Her physician's report indicates that she was doing well with "HIV advanced AIDS," also described as HIV with a history of AIDS. She was also diagnosed with

tobacco abuse with early chronic obstructive pulmonary disease and was doing well on Advair and Combivent (R. 311. 312).

In December, 2004, plaintiff was seen for follow-up. She was doing well but complained of depression and sleep problems. She was put back on medication for depression and was instructed to keep an appointment with the psychiatry department.

At a hearing held on January 24, 2005, plaintiff explained that she suffered from pain in her legs and hands, cramps, arm numbness, shortness of breath, eye problems, forgetfulness, problems maintaining concentration, fatigue and lack of energy, diarrhea, headaches, and poor bladder control. She further explained that her symptoms caused her to wake constantly during the night and sleep frequently during the day. At times, she did not feel well enough to get out of bed or dress. She took medication prescribed for AIDS on a daily basis, as well as over-the-counter pain medicine, but had discontinued medicine for depression. She lived alone and said she had worked sporadically because she was homeless for extended periods of time due to a serious drug addiction, currently in remission. She had performed some volunteer work, cleaning and mopping for a couple of hours per day, for a short time. She was able to care for her personal needs, clean her house, hand-wash her clothes, use a taxi service, occasionally attend church services, and shop for groceries. (R. 358-381). Some of the side effects described might result from antiretroviral medicine (R.111-120).

In April, 2005, plaintiff's mental status was assessed. At that time, plaintiff indicated that her symptoms had decreased with medication. She described chronic bone pain; joint and muscle aches and soreness – particularly in her feet, hands, ankles and legs; and chronic weakness, fatigue, tiredness, low energy level, and exhaustion – to the

7

point that she felt sleepy all the time and took frequent daytime naps. She reported a poor quality of sleep, frequent urination, poor appetite, failing memory, and shortness of breath with exertion (R. 343-344).

---

ALJs must evaluate symptoms by considering the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). The Commissioner interpreted the policy for assessing the credibility of an individual's statements in Social Security Ruling 96-7p. ALJs must carefully consider an individual's statements about symptoms with the rest of the relevant evidence. SSR 96-7p. The credibility of an individual's statements is to be determined by considering all of the evidence concerning the symptoms and how the symptoms affect the individual's ability to work, including medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions; statements and reports from the individual and from treating or examining physicians and other persons about the individual's medical history, treatment and response; prior work record and efforts to work; and daily activities. *Id*. Because consistency is one strong indication that an individual's statements can be accepted as true, ALJs must compare statements made by an individual in connection with his or her claim, evaluate the consistency between such statements and with other information, and determine whether variations in the statements are explained. *Id*. All credibility determinations "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p. This Court will upset an ALJ's credibility determination only if it is "patently

wrong." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993); *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.) *cert. denied*, 479 U.S. 988 (1986).

The ALJ found plaintiff's testimony regarding her inability to perform sustained work activity not credible "for the reasons set out in the body of this decision" (R. 22). While the precise rationale for the adverse credibility assessment is not clearly reported in the body of the decision, the discussion of plaintiff's work record and other evidence permits an understanding of the ALJ's thought process. First, the ALJ felt that plaintiff's work record did not enhance her credibility (R. 17). Second, the ALJ thought plaintiff exaggerated the nature and severity of her symptoms (R. 20). Although the grounds for the credibility determination could have been stated in a clearer manner, the rationale for the ALJ's assessment is identified in a manner sufficient to permit review. *See Zurawski v. Halter*, 245 F.3d 881, 887, 889 (7th Cir. 2001).

Plaintiff targets the second rationale, claiming that her testimony as to the side effects of her HIV medicine was consistent with her medical records. She points out that the ALJ erroneously thought her HIV infection had not advanced to a "full-blow" case of AIDS. The Commissioner concedes that the ALJ erred in this respect, suggesting that the name assigned to the ailment is not relevant, as the proper focus is on the nature and extent of the resulting functional limitations.

As noted above, credibility determinations are based on consideration of all relevant evidence, including medical reports and diagnoses. The ALJ based his credibility assessment, in part, on an erroneous belief that plaintiff had been infected by the HIV virus but had not yet developed a full-blown case of AIDS (R. 19). That finding conflicts with the record, which demonstrates that plaintiff's viral infection had

9

progressed to the immunodeficiency syndrome known as AIDS (R. 148, 300, 301, 307, 309, 311, 312).

When an ALJ inaccurately reports a diagnosis, the concern is two-fold. First, there is a possibility that important portions of the record were overlooked. That is not a valid concern in this case because the ALJ's detailed discussion shows that records describing plaintiff's medical condition were reviewed and considered (R. 17-18). The second possibility is that the ALJ misunderstood the medical evidence. A misunderstanding is a valid concern in this case, as the ALJ's comment appears to reflect his belief that HIV infection (or medication prescribed to prevent HIV from developing into AIDS) could not reasonably be expected to produce the symptoms plaintiff described. 20 C.F.R. §§ 416(b)(4); 416.929(b). In other words, there are reasons to believe that a misunderstanding of the medical evidence likely contributed to the ALJ's finding that plaintiff's testimony was "exaggerated."

Plaintiff also argues that her testimony regarding medication side-effects was supported by the record. On this point, the ALJ logically perceived meaningful inconsistencies between plaintiff's description of her symptoms and remarks recorded in her treatment records. The evidence substantially supports this aspect of the ALJ's credibility assessment. In particular, the treatment records indicate that many of the symptoms described by plaintiff abated with treatment and/or adjustments to her medication, or were not reported, or did not persist in the manner she described (R. 148, 238, 248, 300, 303, 305, 307).

Plaintiff also points to testimony by a vocational expert, who found no reason to doubt plaintiff's testimony. The Court is not persuaded that the ALJ should have relied on this aspect of the vocational expert's testimony. The vocational expert did not know plaintiff and could not judge how she was affected by her symptoms.

In sum, the record indicates that the ALJ's credibility assessment was partially based on a mistaken impression that her HIV infection had not progressed to full-blown AIDS. While this was only part of the rationale for the ALJ's determination, the Court believes a reasonable ALJ could come to a different conclusion regarding plaintiff's claim. Under these circumstances, the Commissioner's decision should be reversed and remanded for further consideration of the evidence and a new decision. *Sarchet v. Chater*, 78 F.3d 305, 308 (7th Cir. 1996)(remand required where ALJ makes serious errors in describing the testimony which impair the reliability of the determination).

## II.   Conclusion

IT IS RECOMMENDED that the Commissioner's final decision denying Alicia M. Murphy's application for supplemental security income be REVERSED and REMANDED for further proceedings consistent with this report.

SUBMITTED:  September 6, 2007 .

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE
